IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DANNY C. HOSKINS, | |
|    Plaintiff, | |
|    v. | Civil Action No.:  PX-22-355 |
| CORIZON HEALTH, *et al.*, | |
|    Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Danny C. Hoskins, an inmate previously incarcerated at Western Correctional Institution ("WCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he received constitutionally inadequate medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Defendants Dr. Stephen D. Ryan ("Dr. Ryan"), Nurse Brenda Reese ("Nurse Reese") and YesCare Corp. ("YesCare") move for dismissal or summary judgment in their favor.  ECF Nos. 61 & 64.[1]  The Court advised Hoskins, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to respond to the motions could result in the Court reaching a decision adverse to him without further notice.  ECF Nos. 62, 66.  Hoskins has responded.  ECF Nos. 63 and 68.  Nurse Reese and YesCare replied, ECF No. 67, and Hoskins surreplied without leave of the Court, prompting Defendants to ask that this Court strike the surreply.[2]  ECF Nos. 69, 70.  The Court has thoroughly reviewed the pleadings and no hearing is

---

[1] Dr. Ryan's Motion was filed under seal without explanation. ECF No. 64.  The Clerk previously directed Dr. Clark to separately move to seal the pleading, but he has not done so.  ECF No. 65.  Accordingly, the Clerk is directed to unseal ECF No. 64.

[2] Absent court order, surreplies are not accepted.  *See* Local Rule 105.2(a) (D. Md. 2016).  "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) *aff'd,* 85 F. App'x 960 (4th Cir. 2004), citing *Lewis v. Rumsfeld,* 154 F.Supp.2d 56, 61 (D.D.C. 2001).  Hoskins did not move for leave to file a surreply, and the filing amounts to no more than a reiteration of his previous arguments.  The motion to strike is thus granted.

necessary. Local Rule 105.6 (D. Md. 2023). For the reasons discussed below, Defendants YesCare and Nurse Reese's motion, construed as one for summary judgment, and Dr. Ryan's motion, construed as one to dismiss, will be granted.

I.  **Background**

Hoskins suffers from a variety of serious chronic conditions, including history of stroke, hemiplegia, hemiparesis, lower back and neck pain, blood clots, high blood pressure, and diabetes. ECF No. 23 at 6. He is confined to a wheelchair. *Id*. In the Third Amended Complaint, Hoskins avers that YesCare administered care in a constitutionally deficient manner in its efforts to save money and "make millions in profit." *Id*. at 2-3. Hoskins maintains that he had been denied "cholesterol and aspirin chew medications," which "possibly" caused him to suffer a stroke. *Id*. at 6. He complains that he had never received a proper assessment of his lower back pain, nor has he received adequate medication or physical therapy. He also avers that YesCare's penny pinching delayed his provision of a wheelchair, which had been "broken for months," and that staffing shortages caused his sick call appointments to be "delayed, cancelled or simply dismissed." *Id*. at 2, 7-10.

As to Nurse Reese, Hoskins avers that in her capacity as a nurse supervisor, she ordered other medical staff not to make referrals to outside healthcare providers or prescribe adequate pain medications to "save money." ECF No. 23 at 3. Nurse Reese also allegedly did not provide sufficient nursing staff, "causing late or canceled sick calls and chronic care appointments" and, resulting in Hoskins not receiving his medication "for weeks at a time" and not seeking doctors for "8-9 months at a time, all to save money." *Id*.

Hoskins lastly avers that Dr. Ryan has failed to adequately execute his duties regarding provision of physical therapy. ECF No. 23 at 3. Hoskins faults Dr. Ryan for (1) employing "a

2

therapist 'Lloyd' who was not properly licensed and a second therapist who could do no hands on therapy due to her bad back;" (2) continuing "[PT] sessions even though the steamer for towels and defibulator [*sic*] for muscles machines were broken;" and (3) "allow[ing] months to go by before continuing sessions with Plaintiff causing repeated setbacks in Plaintiff's functioning and strength ultimately causing an increase in pain." *Id*.

The medical records, which Nurse Reese and YesCare append to their motion, paint a different picture. To assess the totality of Hoskins' medical treatment from 2019 through the filing of this lawsuit, his course of care is summarized below.

On January 15, 2019, Hoskins saw the Regional Medical Director, Dr. Asresahegn Getachew, and Nurse Lori Keister for a chronic care telemedicine visit. ECF No. 61-5 at 30-32. Dr. Getachew documented that since 2017, Hoskins was wheelchair-bound with a history of hypertension, stroke, and chronic back pain. *Id*. at 30. The likely cause of Hoskins' stroke was poorly controlled hypertension which was now well controlled. *Id*. Dr. Getachew also re-ordered arch supports and a leg brace for Hoskins that he had never received. *Id*. As for Hoskins' history of gastroesophageal reflux disease, Dr. Getachew renewed Hoskins' prescription for Prilosec. *Id*. Regarding Hoskins' chronic back pain accompanied by multilevel degenerative joint disease, Hoskins had been taking Ultram (Tramadol) to control pain. *Id*. Because Tramadol is a Schedule IV controlled substance that carries a risk of dependence, Dr. Getachew, as Regional Medical Director, had to approve the prescription. ECF No. 61-2 at 5. Lastly, Dr. Getachew prescribed Metformin to treat Hoskins' Type-2 diabetes mellitus. ECF No. 61-5 at 31.

On January 23, 2019, Hoskins met with the multidisciplinary Pain Management Panel ("the Panel") to address his chronic back pain with multilevel degenerative disc disease. ECF No. 61-5 at 24. The Panel reviewed his medical history, to include previous attempts to control his pain

with Baclofen, Tylenol #3, Tylenol, Tramadol, Percocet, and Neurontin.  *Id*.  Hoskins reported that Baclofen worked in the past.  *Id*. at 25.  Accordingly, the Panel put a plan in place to transition from Tramadol to Baclofen.  *Id*.  The Panel also explained to Hoskins that Tramadol may be appropriate for short-term use by certain patients with severe low back pain, but that it should not be used routinely or long-term.  *Id*.  The Panel also advised Hoskins that treatment may only yield a partial decrease of pain, but he will never be pain free by medication alone.  *Id*.  The Panel also encouraged Hoskins to exercise.  *Id*.

Hoskins next saw Nurse Practitioner Mary Miller.  Hoskins noted that the physical therapy ("PT") he had previously received at another institution was not helpful.  ECF No. 61-5 at 28.  Nurse Practitioner Miller explained that while Hoskins remained on Tramadol for now, that could change with updated imaging.  *Id*.  Nurse Practitioner Miller accordingly sought approval for an MRI which was scheduled for March 11, 2019.  ECF No. 61-19 at 24-27.

Hoskins received the MRI of his spine as scheduled.  ECF No. 61-20 at 31-32.  The radiology report identified multilevel degenerative spondylosis, multilevel disc bulge and protrusion, and variable degrees of central neural foraminal encroachment.  *Id*.  On April 7, 2019, Dr. Getachew renewed Hoskins' wheelchair and pusher, bottom bunk, bottom tier, and front cuff order for one year.  ECF No. 61-17 at 27.

On May 7, 2019, Dr. Patrick O'Neil received approval to consult with Hoskins to develop a PT plan, ECF No. 61-19 at 27-28, and on May 21, 2019, Dr. Getachew again approved Hoskins' Tramadol prescription.  ECF No. 61-5 at 15-16.  Two days later, on May 23, 2019, Dr. Ryan evaluated Hoskins, and thereafter recommended eight PT sessions to improve the use of his right leg, with a goal of achieving independent movement and weight transfers.  *Id*. at 16-17.

On June 13, 2019, Hoskins saw Dr. Kashaun Temesgen for a chronic care visit, during which Hoskins complained of back and neck pain. ECF No. 61-5 at 13. Hoskins also asked for the results from his MRI in March, but they were not available. *Id*. Dr. Temesgen assessed Hoskins' various medical problems and recommended an increase in Tramadol to 200 mg until PT was completed. The doctor also ordered a low-sodium diet to treat Hoskins' hypertension. *Id*. at 13-14. Dr. Getachew approved again the Tramadol prescriptions on June 19, 2019, and July 14, 2019. ECF No. 61-5 at 10-11.[3]

On August 5, 2019, Hoskins saw Nurse Burnice Swan. ECF No. 61-5 at 9-10. Hoskins told Nurse Swann that he had not received the leg brace or insole that had been ordered for him, and he had not started PT. *Id*. Nurse Swan confirmed that the devices and PT sessions had been ordered and promised to follow up as to why Hoskins had not yet received either. *Id*. at 9.

On September 1, 2019, Nurse Practitioner Janette Clark examined Hoskins during a chronic care visit. ECF No. 61-5 at 6-9. Nurse Practitioner Clark noted that Hoskins' hypertension and diabetes were getting worse, so she increased his Metformin dose, ordered follow up lab tests, and placed him on a 2400-calorie per day diabetic diet. *Id*. at 7. Nurse Practitioner Clark also ordered a brace for Hoskins' right foot and ankle and resubmitted the request for eight PT sessions. *Id*. at 8-9. Last, Nurse Practitioner Clark sought and received from Dr. Getachew a renewal of the Tramadol prescription for an additional 90 days. *Id*. at 5-6.

On September 17, 2019, Dr. Bernard McQuillan examined Hoskins to evaluate his pain management. ECF Nos. 61-4 at 38-39 and 61-5 at 1-4. By this point, Hoskins was experiencing neck and lumbar back pain radiating through his legs. ECF No. 61-4 at 39. Dr. McQuillan observed that Hoskins was in considerable pain but that his PT had not yet started. *Id*. The doctor

---

[3] For the next two years, Hoskins' medication regimen was routinely renewed without interruption. *See generally* ECF Nos. 61-2 through 61-17.

5

also observed Hoskins' residual right muscle weakness, a right foot drop, and muscle atrophy, and that his MRI showed significant cervical disc disease at multiple levels. *Id*. Accordingly, Dr. McQuillan advised to continue Tramadol, increase the Baclofen dose, and add Lyrica. *Id*. Dr. McQuillan submitted a consultation request for neurosurgery and leg brace evaluations. ECF No. 61-19 at 36. The neurosurgery consult was subsequently scheduled for October 16, 2019, and Dr. Getachew approved the recommended prescriptions. ECF Nos. 61-5 at 2-3 and 61-4 at 33-38.

As for the leg brace recommendation, the medical utility management team ("UM"), who routinely reviews specialized recommendations, instead endorsed the alternative of a prefabricated ankle foot orthosis ("AFO"). ECF No. 61-19 at 36. Dr. McQuillan agreed. *Id*.

Hoskins also received the eight prescribed PT sessions on September 18, 25, and 30 and October 2, 9, 21, 23, and 28, 2019. ECF No. 61-4 at 34-36; ECF No. 61-17 at 16-17, 19-25. On October 29, 2019, Hoskins saw Dr. Ryan for PT recertification. ECF No. 61-4 at 29-31. During the visit, Hoskins reported improvement in his stability, so Dr. Ryan recommended six more sessions. *Id*.

On October 16, 2019, Hoskins saw neurologist Dr. J. Marc Simard at the University of Maryland Neurosurgery Clinic. ECF No. 61-20 at 33-35. Hoskins reported lower back and neck pain since the 1980s with lower back pain radiating down his right leg. Hoskins also described persistent right leg weakness since he had his stroke. *Id*. After reviewing the MRI, Dr. Simard recommended a PT evaluation, MRI of the lumbar spine, repeat MRI of the cervical spine, a back and leg brace, and to continue the currently prescribed pain medication. *Id*. at 35.

On October 25, 2019, Hoskins saw Dr. McQuillan for chronic care. ECF No. 61-4 at 31-33. Hoskins reported improvement on PT and considerable pain relief on Tramadol, Lyrica, Baclofen, and lidocaine patches. *Id*. His hypertension was controlled with Lasix, lisinopril, and

Norvasc, and his diabetes was controlled with Metformin. *Id*. at 31-32. Dr. McQuillan submitted the requests for the cervical and lumbar spine MRIs that Dr. Minard had recommended. ECF No. 61-20 at 2-11. But UM rejected the follow up MRIs as not medically necessary because additional imaging would not change the recommended course of care. *Id*. at 7

On November 12, 2019, Hoskins received his leg brace (ECF No. 61-17 at 18), and about a month later, Hoskins was approved for additional PT. ECF No. 61-20 at 12-13. When Hoskins saw Dr. Ryan two weeks later, on December 24, 2019, Hoskins appeared unsteady and, in Dr. Ryan's view, he presented a significant fall risk. ECF No. 61-4 at 23-24. The PT objectives, therefore, were augmented to include the goal of independent static standing, transfers, and transitional movements, and to decrease his fall risk. *Id*. Hoskins underwent PT on December 30, 2019, and January 6, 8, and 13, 2020. ECF No. 61-13 at 22-23, 26-29; ECF No. 61-17 at 16-17.

On January 14, 2020, Hoskins saw Dr. Ryan for a follow up evaluation. ECF No. 61-13 at 21. After examination, Dr. Ryan concluded that Hoskins had achieved maximum benefit and functional mobility from PT. *Id*. On February 12, 2020, Hoskins received wheelchair authorization for another year, (ECF No. 61-17 at 28), and timely renewal for a wheelchair with a pusher, as well as a bottom bunk, housing on a bottom tier, and an AFO leg brace. ECF No. 61-12 at 3.

On October 25, 2020, Hoskins saw Nurse Practitioner Clark, and complained of right facial pain. ECF No. 61-10 at 1-3. A month later, Hoskins saw Dr. Mohammed for a provider visit, and reported that something was wrong in his stomach region below his right ribs and that he needed the right-side leg rest of his wheelchair repaired. ECF No. 61-9 at 36-38. Dr. Mohammed ordered x-rays and lab tests. *Id*. at 37. At this point Hoskins' diabetes was not well controlled, but Hoskins refused to start insulin, opting to take glyburide instead. *Id*. at 37.

7

On February 22, 2021, Hoskins saw Dr. Mohammed for chronic care, and still, Hoskins refused to start insulin. ECF No. 61-16 at 18. All other care appeared routine. *Id*. at 16, 19-20. Dr. Mohammed saw Hoskins again on February 25, 2021, to discuss complications from uncontrolled diabetes. ECF No. 61-16 at 14-15. Undaunted, Hoskins still would not check his blood glucose or take insulin. *Id*. Considering Hoskins' refusal, Dr. Mohammed also prescribed Jardiance with the glyburide. *Id*. at 12-13.

On March 23, 2021, Hoskins saw Nurse Fidelis Atianjoh for right-sided facial pain and numbness, generalized weakness of the right side, and headache. ECF No. 61-16 at 10. Nurse Atianjoh noticed that Hoskins was guarding the right side of his face and his right side appeared weaker than his left. *Id*. Because Hoskins' symptoms were consistent with a stroke, he was immediately transported to a hospital emergency room. *Id*. A brain CT scan showed material changes which indicated he was suffering from a blood clot in the right venous sinus. *Id*. at 8. A brain MRI confirmed acute dural thrombosis involving the right transverse sinus. *Id*. Hoskins was started on a heparin drip as an anticoagulant as well as morphine for pain. *Id*.

On March 28, 2021, Hoskins returned to the WCI infirmary. ECF No. 61-15 at 37-38. Nurse Practitioner Clark examined Hoskins, and he reported that his headache, nausea, and confusion had dissipated. *Id*. at 34-36. They also discussed the management of his newly prescribed anticoagulants. A few days later, on April 3, 2021, Hoskins saw Nurse Practitioner Clark for follow-up evaluation. ECF No. 61-15 at 23-24. Nurse Practitioner Clark increased Hoskin's Coumadin dose because the anticoagulant had not reached therapeutic range. *Id*. Nurse Practitioner Clark also ordered a blood test for April 7, 2021, which was repeated on April 12 and 15, and May 4, 2021. *Id*. at 10, 15, 18.

In May of 2021, Hoskins remained stable, and all prior prescriptions were renewed. ECF No. 61-17 at 15; ECF No. 61-15 at 5-6. But by June, his headache had returned. ECF No. 61-14 at 33. Nurse Practitioner Clark, therefore, renewed the request for scans of his head, which was approved and scheduled for July 13, 2021. *Id*. at 34, 37-38; ECF No. 61-20 at 23-26. The scans ultimately revealed improvement, namely increased blood flow in the area of the prior thrombosis. ECF No. 61-20 at 36-37. Hoskins also saw Nurse Coleman in chronic care the same day. ECF No. 61-14 at 29. They discussed strategies to lower his cholesterol and control his diabetes through diet and exercise even from his wheelchair. *Id*. Nurse Coleman followed up with Hoskins on August 11, 2021, to discuss anticoagulant management, and she encouraged Hoskins to self-propel his wheelchair more often for exercise. *Id*. at 26.

On August 24, 2021, Hoskins saw Dr. Cook for a chronic care visit. Dr. Cook switched out Coumadin for Xarelto, an alternate blood thinner that is far easier to manage than Coumadin. *Id*. at 17-19. Dr. Cook also discussed that Hoskins may need to begin insulin treatment, and otherwise renewed all other medication and follow-up lab tests. *Id*. Four days later, Hoskins requested that he discontinue Lyrica, which he was permitted to do once signing proper consent forms. *Id*. at 13; ECF No. 61-16 at 32.

On September 7, 2021, Hoskins met with Dr. Aaiysa Ansari-Lawal to discuss the results of his recent brain MRI. ECF No. 61-14 at 9-11. During the review, Dr. Ansari-Lawal again discussed starting Hoskins on insulin, but he flatly refused and would not follow the recommended diabetic diet. *Id*. Accordingly, Dr. Ansari-Lawal increased the dose for Jardiance and glyburide and ordered daily glucose monitoring. *Id*.

On October 29, 2021, Hoskins saw Nurse Practitioner Clark for his ongoing headaches. ECF No. 61-14 at 2-4. Clark added low dose Elavil at bedtime to treat the headaches, and the next

day submitted a consultation request for Hoskins to see a neurologist. ECF No. 61-13 at 37; ECF No. 61-20 at 27. UM denied the recommendation on the ground that the scans showed improvement. ECF No. 61-20 at 28. On November 5, 2021, Clark appealed that decision and Dr. Getachew agreed with Clark, but they were ultimately overruled. *Id*. at 27-28.

On January 19, 2022, Hoskins had a chronic care telemedicine visit with Dr. Dereje Tesfaye and Nurse Keister. ECF No. 61-9 at 27. Hoskins complained of numbness and tingling in his feet/toes and pain in his left foot around the toenail area. *Id*. Dr. Tesfaye observed Hoskins' noncompliance with diabetes medication and diet and discussed both with Hoskins. *Id*. at 28. The doctor ordered labs and updated prescriptions. *Id*. at 28-29.

On April 17, 2022, Hoskins reported that his wheelchair was broken, and he received another the next day. ECF No. 61-9 at 16; ECF No. 61-17 at 10. Hoskins also saw Nurse Taferi on two separate occasions in May and June of 2022 for several issues. ECF No. 61-9 at 11-12, 14-15. He had a follow up appointment with Nurse Practitioner Clark on June 12, 2022, during which he complained of significant weight loss over the last year. ECF No. 61-9 at 6-10. Hoskins had stopped many of his medications on his own, to include medication that was designed to help with his significant leg swelling. *Id*. Nurse Practitioner Clark also examined Hoskins' feet and noted changes to pigmentation from likely peripheral vascular disease, a progressive disorder of the blood vessels caused by atherosclerosis, a buildup of fatty deposits that narrow blood vessels. *Id.;* ECF No. 61-2 at 23. Nurse Practitioner Clark ordered knee-high compression socks for Hoskins and advised he elevate his legs whenever possible. ECF No. 61-9 at 6. Clark also advised Hoskins to refrain from eating concentrated sweets and salty foods. *Id*. at 8. Hoskins' order for wheelchair with pusher, AFO leg brace, and bottom tier was renewed on June 12, 2022. ECF No. 61-17 at 8.

On August 23, 2022, Hoskins again saw Nurse Practitioner Clark. ECF No. 61-8 at 36-39; 61-9 at 1. Hoskins complained of persistent right frontal headache. ECF No. 61-8 at 36. Nurse Practioner Clark reassured Hoskins that the last MRI had showed improvement. She also ordered repeat labs in two months and praised him for losing weight and managing his diabetes. Last, she increased his bedtime dose of Elavil. *Id*. at 39.

On November 27, 2022, Hoskins saw Nurse Crystal Taylor, complaining of dizziness and falling. ECF No. 61-8 at 27-29. They discussed Hoskins' upcoming chronic care appointment and how Hoskins can reduce such symptoms by rising slowly from a prone position. *Id*. at 29. On December 16, 2022, Hoskins reported to Nurse Evans Budu that he had fallen two weeks prior which exacerbated his back pain. Nurse Budu observed no outward signs of injury. *Id*. at 23-26. Hoskins was prescribed Ketorlac and Nurse Budu noted that medical would refer Hoskins for a provider visit if the pain continued or worsened. *Id.* at 25.

On January 10, 2023, Hoskins saw Dr. Mehta for a provider visit. ECF No. 61-8 at 17-21. Dr. Mehta reviewed the entirety of Hoskins chronic conditions. Two weeks later, Dr. Mehta performed a full physical on Hoskins. *Id*. at 7-11.

Hoskins contends broadly that his course of care has been so inadequate as to constitute an Eighth Amendment violation. He first filed suit on February 10, 2022, and has amended and supplemented his pleading several times. ECF Nos. 2, 6, 7, 12, 14, 17, 18. As of April 2023, Hoskins had consolidated his claims into the Third Amended Complaint which is the operative pleading.

## II.     **Standard of Review**

Defendants YesCare and Nurse Reese have moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their

favor under Rule 56. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

YesCare and Nurse Reese seek summary judgment, and they submitted Hoskins complete medical record for the Court's consideration. Accordingly, Hoskins was placed on proper notice that the Court could resolve the matter on summary judgment. *See* ECF Nos. 16, 21. Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, the court must "view the evidence in the light most favorable to … the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or

denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

Hoskins responds that summary judgment is premature because if he were granted formal discovery, he could produce YesCare medical personnel who would attest that generally they were directed not to order a variety of tests, medications, and medical devices as part of the corporation's cost-saving objectives.  ECF No. 63 at 1-2.  Allowing discovery is "broadly favored" in advance of reaching summary judgment and should be "liberally granted." *Farabee v. Gardella*, __ F.4th __, 2025 WL 759603 at *5 (4th Cir. Mar. 11, 2025).  But the nonmovant "cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (*quoting Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  To justify denying summary judgment because "additional discovery is necessary," requires the movant to show that the facts to be adduced are "essential to [the] opposition." *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), rev'd on other grounds, (alteration in original) (citation omitted). "[W]here the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment," then the Court may proceed to summary judgment absent formal discovery. *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x. 274 (4th Cir.), cert. denied, 555 U.S. 885 (2008).

As more fully explained below, even if the Court accepts as true that YesCare and Nurse Reese generally discouraged administering expensive tests and procedures, or that staffing

decisions were made with the bottom line in mind, Hoskins has not identified how such fiscal objectives compromised his care. Thus, the Court will deny Hoskins request for formal discovery and proceed to summary judgment as to Nurse Reese and YesCare based on the current record.

Dr. Ryan separately moves to dismiss the Complaint for failing to state a claim pursuant to Rule 12(b)(6). ECF No. 64. In reviewing the motion, the Court accepts the well-pleaded allegations as true and most favorably to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

With these standards in mind, the Court turns first to YesCare and Nurse Reese's motion.

**III.    Analysis**

    **A. Nurse Reese and YesCare's Motion**

The Third Amended Complaint, construed most favorably to Hoskins, alleges that YesCare, Nurse Reese, and Dr. Ryan deprived him constitutionally adequate medical care, in violation of Eighth Amendment right to be free from "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).[4] The crux of Hoskins' allegations against YesCare and Nurse Reese is that they denied him necessary medical treatment and interventions, such as imaging, outside specialist consultations, medications, and medical equipment, all for the purpose of saving money, resulting in harm to him. ECF No. 23 at 2-3. Additionally, he alleges that YesCare and Nurse Reese failed to maintain necessary staffing levels of nurses and providers, triggering delays in provision of healthcare which, in turn, prolonged his pain and suffering and denied him adequate medical treatment. *Id*.

To survive summary judgment on his Eighth Amendment claim, Hoskins must adduce some evidence that Defendants' acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard – a showing of mere

---

[4] Hoskins Third Amended Complaint is sprawling in that he sued the above-named movants but also a host of non-medical defendants and former healthcare provider, Corizon Health, Inc. ECF No. 23. *See also* ECF No. 28 (automatic stay applied as to Corizon Health after declaring bankruptcy). As to the current movants –YesCare, Nurse Reese and Dr. Ryan – Hoskins broadly alleges that YesCare also violated his "rights under the Americans With Disabilities Act under 42 U.S.C. § 120101-03." ECF No. 23 at 2. Viewing the pleading most charitably to him, Hoskins does not aver how any of the movants violated the ADA. And to the extent that Hoskins alleges that denial of constitutionally adequate medical care alone also makes plausible an ADA claim, the Court cannot agree. This is because no facts make plausible that any of the Defendants denied Hoskins treatment on account of his disability. *See, e.g.*, *Goodman v. Johnson*, 524 F. App'x 887, 890 (4th Cir. 2013) (affirming dismissal of ADA claim based on refusal to provide inmate with contact lenses when no facts made plausible the denial was based on the inmate's disability); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled."). Thus, any such ADA claims fail as a matter of law.

negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto v. Stansberry*, 841 F.3d at 219, 225 (4th Cir. 2016). Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

Deliberate indifference specifically requires the plaintiff to show that objectively, he was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Proof of an objectively serious medical condition, however, does not end the inquiry. The plaintiff must also demonstrate that defendants exhibited "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part

of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged considering the risk known to the defendant at the time.  *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000); *see also Jackson*, 775 F.3d at 179.  That said, "negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).  Adequacy of treatment in this context "is one of medical necessity and not simply that which may be considered merely desirable." *Bowring*, 551 F.2d at 47-48.

It is undisputed that Hoskins suffers from objectively serious medical needs, including a host of problems stemming from his stroke, hemiplegia, diabetes, and hypertension.  ECF No. 61-1 at 30.  He also suffers from chronic back pain associated with multilevel degenerative joint disease.  ECF No. 61-2 at 5.  None of the Defendants dispute this contention.

The claim, nonetheless, fails because no evidence supports that YesCare or Nurse Reese denied or delayed Hoskins adequate care.  Although Hoskins broadly alleges that YesCare and Nurse Reese failed to provide a panoply of care to save money (ECF No. 23 at 2-3), the robust medical record demonstrates that overall, Hoskins received medically appropriate treatment as to each of his ailments.  *See generally* ECF Nos. 61-2 *through* 61-17.  While Hoskins may take issue with late or canceled appointments, or delays in receiving his medicine, ECF No. 23 at 3, he fails to adduce that any specific delay or denial so critically deprived him of necessary attention with deliberate indifference to his serious needs.

17

Nothing in the record, for example, supports an unmitigated denial of a wheelchair as he maintains. Or that he was denied insufficient imaging of his back, as he avers. Rather Hoskins had a wheelchair which was renewed annually, and when it broke, he received a new one the next day. ECF No. 61-4 at 7. Hoskins also received an MRI of his spine in early 2019, and while doctors later disagreed about whether a follow up MRI would benefit him*, id* at 7, disagreement about the proper course of treatment alone cannot sustain an Eighth Amendment claim. Nor can the episodic delays in treatment – against a three-year backdrop of constant care and follow up appointments for his myriad illnesses – permit a rational factfinder to conclude the system denied him constitutionally adequate care.

Hoskins, in response, argues that he could produce several nurses on staff with YesCare who would attest to the corporation's cost saving objectives. ECF No. 63 at 1-2. Hoskins maintains that this evidence bolsters his claims against Nurse Reese and YesCare having denied him adequate care by elevating profit over patient care. *Id.* But even if the Court takes as true that YesCare tries to save money, nothing suggests that Hoskins had been denied any particular course of treatment with that sole purpose in mind. Absent any evidence that connects the purported cost-saving practices to an unconstitutional denial of medical treatment for Hoskins, the proffered evidence makes no difference to the sufficiency of the claim. Summary judgment will be granted in favor of YesCare and Nurse Reese.

**B.   Dr. Ryan's Motion**

Like the allegations against Nurse Reese and YesCare, the Third Amended Complaint seems to fault Dr. Ryan for failing to properly manage Hoskins PT needs. ECF No. 23 at 3. Hoskins particularly blames Dr. Ryan for another therapist's lack of proper licensure and for the department administering care with broken machinery. ECF No. 23 at 3. Dr. Ryan, however,

rightly contends that Hoskins has failed to make plausible that Ryan personally delayed or denied Hoskins constitutionally adequate medical care with deliberate indifference. Or that Dr. Ryan's acts or omissions as "the owner of his physical therapy company," purposely or even recklessly failed to administer constitutionally adequate PT services. Moreover, even if Dr. Ryan had been personally responsible for the delay in Hoskins receipt of PT for roughly four months, this delay alone does not rise to the level sufficient to support an Eighth Amendment claim where Hoskins received constant pain management medications throughout. *See Formica v. Aylor*, 739 Fed. App'x 745, 755 (4th Cir. 2018) (delay in medical care does not amount to an Eighth Amendment violation unless "'the delay results in some substantial harm to the patient,' such as 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'") (quoting *Webb v. Hamidullah,* 281 F. App'x 159, 166-67 (4th Cir. 2008)). In the end, Hoskins' mere disagreement with the way Dr. Ryan carried out Hoskins' PT plan does not permit a rational juror to find Hoskins was denied constitutionally adequate care.[5]

## IV. Conclusion

For the foregoing reasons, Defendants YesCare Corp. and Nurse Brenda Reese's Motion, construed as one for summary judgment, is granted, as is their Motion to Strike Hoskins' surreply. Defendant Dr. Stephen Ryan's Motion to Dismiss is granted.

A separate order follows.

| | |
|---|---|
| 3/21/25 | /S/ |
| Date | Paula Xinis<br>United States District Judge |

---

[5] To the extent Hoskins intended to bring a state common law negligence claim against Dr. Ryan, the Court declines to exercise supplemental jurisdiction. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-727 (1966)). The Court will do so here, leaving Hoskins free to pursue such claims in state court, should he wish.